

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Superseded By Art 29d V.C.S.*

Honorable B. F. McKee
County Auditor
Hidalgo County
Edinburg, Texas

Dear Sir:

Opinion No. O-3351
Re: The legal date from which
to calculate refunds due for
unauthorized payments under
Acts of 1937, 45th Legisla-
ture, Ch. 194.

Your letter of March 26, 1941, requesting an
opinion of this department reads in part as follows:

"Did the Act (Acts 1937, 45th Leg. P. 592,
ch. 194) under which the County Commissioners
of Hidalgo County drew $50.00 per month for car
expense cease to affect this County on April 1,
1940, or June 22, 1940? or Jan. 1, 1941. Some
of the Commissioners have signified a willing-
ness to refund payment received subsequent to
January 1st, 1941, that being the beginning of
a new term of office as well as the beginning
of a new calendar year. Which of the three dates
mentioned (April 1, 1940, June 22, 1940 or Jan-
uary 1, 1941) is the legal date upon which to
calculate refunds due for unauthorized payments?"

In connection with your request, we acknowledge
receipt of your letter of March 27th relative thereto, and
have given the authority cited therein our full consideration.

House Bill No. 848, Ch. 194, page 592, Acts of the
Forty-fifth Legislature, 1937, Regular Session, reads in
part as follows:

"Section 1. In any county in this State
having a population of not less than seventeen
thousand, six hundred (17,600) and not more than

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

643

seventeen thousand, seven hundred (17,700) and
in any county in this State having a population
of not less than seventy-seven thousand (77,000)
and not more than seventy-seven thousand, one
hundred (77,100) and in any county in this State
having a population of not less than seventy-
seven thousand, five hundred(77,500) and not
more than seventy-seven thousand, six hundred
(77,600), according to the last preceding Fed-
eral Census, the Commissioners Court is hereby
authorized to allow each Commissioner the sum
of Fifty Dollars ($50) per month for traveling
expenses and depreciation on his automobile while
on official business. Each such Commissioner
shall pay all expenses in the operation of such
automobile and keep same in repair free of any
other charge to the county.

"...."

Article 2340, Revised Civil Statutes, 1925, provides
as follows:

"Before entering upon the duties of their
office, the county judge and each commissioner
shall take the official oath, and shall also
take a written oath that he will not be direct-
ly or indirectly interested in any contract with,
or claim against, the county in which he resides,
except such warrants as may issue to him as fees
of office. Each commissioner shall execute a
bond to be approved by thencounty judge in the
sum of three thousand dollars, payable to the
county treasurer, conditioned for the faithful
performance of the duties of his office, that he
will pay over to his county all moneys illegally
paid to him out of county funds, as voluntary
payments or otherwise, and that he will not vote
or give his consent to pay out county funds ex-
cept for lawful purposes."

It is assumed in your request that one or other
of the three dates mentioned by you is the correct date from
which to calculate refunds due to the county under the Act
in question. Your request raises the point as to whether

Honorable B. F. McKee, Page 3

a county commissioner who votes for and receives county
funds as traveling expense under an unconstitutional stat-
ute is liable therefor.

We intend to deal principally with this point,
although under our opinion No. 0-3144, addressed to you and
approved April 9, 1941, it is clear that such commissioners
would be liable for a refund of all payments received from
and after the date of the official preliminary announcement
of the 1940 Federal Census, which according to your letter,
was June 22, 1940.

In our opinion No. 0-2811, approved October 16,
1940, this department held House Bill No. 848, Ch. 194, Acts
1937, Forty-fifth Legislature, unconstitutional and void as
it applied to Cameron County. As applied to Hidalgo County,
you were similarly advised by our opinion No. 3276 approved
March 21, 1941. The first above mentioned opinion is found
in the monthly reports of the Attorney General, Volume 2,
Book 10, page 312.

Judge Cooley, in his works on constitutional limi-
tations, Volume 1, Eighth Edition, at page 382, says:

"When a statute is adjudged to be unconsti-
tutional, it is as if it had never been. Rights
cannot be built up under it; contracts which de-
pend upon it for their consideration are void;
it constitutes a protection to no one who has
acted under it, and no one can be punished for
having refused obedience to it before the deci-
sion was made. And what is true of an act void
in toto is true also as to any part of an act
which is found to be unconstitutional, and which,
consequently, is to be regarded as having never,
at any time, been possessed of any legal force."

The Supreme Court of Texas in Sessums v. Botts, 34
Tex. 335-50, did not construe the above authority as announcing
a doctrine that an unconstitutional law could be no protection
to officers or citizens, before the same had been passed upon and
adjudged invalid. The court in its opinion said:

"We are not willing to endorse the proposi-
tion, in its broadest sense, that a ministerial

645

officer has the right and power to decide upon
the constitutionality or unconstitutionality of
an act passed with all the formality of law. It
is the duty of such officers to execute and not
to pass judgment upon the law, and we are of the
opinion that the clerk of the district court
should have refused to have issued execution in
violation of what appeared to be a valid and binding
law, until the same had been declared void by the
tribunal properly constituted for that purpose."

The courts of Texas have never directly passed
upon the question raised by your request, to-wit, whether
a county commissioner, voting for and receiving funds under
an Act of the Legislature, passed with all appearance of
a valid law with beneficial interests inuring solely to
such officers as provided in Section 1, House Bill 848,
45th Legislature, is liable.

Article 2340, supra, appears to raise a very strong
inference of liability under such an act, however, by setting
forth as a condition of each commissioner's bond, "that he
will pay over to his county all moneys illegally paid to him
out of county funds, as voluntary payments or otherwise, and
that he will not vote or give his consent to pay out county
funds except for lawful purposes." (Underscoring ours) That
such payments received under an unconstitutional or void law
are illegal and for no lawful purpose, cannot be questioned.
Such condition of the commissioner's bond, however, applies
with equal force and dignity to all illegal payments, whether
to the commissioners themselves or made to other officers.

The Supreme Court of Oklahoma in the case of Wade
v. Board of Commissioners of Harmon County, 17 Pac. 2nd 690,
held that the Board of County Commissioners of a county will
not be penalized under certain acts of the Legislature for
payment of salaries to county officers under an unconstitu-
tional local act where such payments were made in good faith
and before the law is declared unconstitutional, or before
they are advised by the proper official as to its unconsti-
tutionality.

Supported by later decisions in that state, the
Supreme Court of Oklahoma recognizes and views the question
of "good faith" in the light of a legal duty imposed upon
ministerial officers under certain acts passed in which they

Honorable B. F. McKee, Page 5

have a direct personal interest distinguishable from those requiring them to perform ministerial acts beneficial to the public.

It is the duty of thencounty and district attorneys, upon request, to give an opinion or advice in writing to any county or precinct officer of their district or county, touching their official duties (Article 332, Revised Civil Statutes, 1925), and it has been the policy of the Attorney General of Texas to so advise said officers upon such questions touching the public interest, or concerning their official duty. (Article 4399, Revised Civil Statutes) The Oklahoma authorities appear to recognize and be inclined to follow the Supreme Court of Missouri in the case of Wiles v. Williams, 133 S. W. 1, from which opinion, on page 6, we quote:

"In the case at bar, it appears from the record that the Attorney General of the State was called upon and gave a written opinion to the county court of Nodaway county, which was the fiscal agent thereof, to the effect that the act in question was unconstitutional, null and void, and that said court informed respondent of said opinion, and notified him not to pay the warrant mentioned in the pleadings, and that if he did so, he would be held liable upon his bond for the amount so paid thereon.

"In the light of those disclosures, the respondent not only had the legal right to raise the constitutionality of the act, but under those facts it became his legal duty to do so; otherwise he would have paid the warrant at his peril. We therefore hold that in the case at bar the respondent had the right to raise the constitutionality of the act of 1907."

We are not here declaring that a legal duty was imposed upon the county commissioners to raise any question as to the constitutionality of the act at the time they voted to pay themselves under its provisions. Moreover, there is a presumption that they in good faith, acted under the belief same was constitutional.

As pointed out in Wiles v. Williams, supra, such officers were not appointed or elected to pass upon consti-

Honorable B. F. McKee, Page 6

tutional questions and it is common knowledge that county commissioners are not learned in the law, consequently, not qualified to intelligently pass upon such questions.

The condition of the commissioner's bond, however, leads us to believe that the Supreme Court of Oklahoma announced what would be the correct rule following Wiles v. Williams, supra, to the effect that under such an act of the Legislature whose provisions are solely to the personal and beneficial interests of the officer, knowledge on the part of the officer of its unconstitutionality, received through advice given him by his county or district attorney or indirectly from the Attorney General of Texas, is sufficient to deprive such officer of any equities and fix liability from that time on for illegal payments voted for and received under said unconstitutional law.

In answering the above question, therefore, it is the opinion of this department that the time from which to calculate refunds due for illegal payments under the Acts of 1937, 45th Legislature, Ch. 194, is the date on which the county commissioner received authoritative advice that such Act was unconstitutional. Were the above Act constitutional, it would no longer apply to Hidalgo County after the official preliminary publication of the 1940 Federal Census, hence payments made thereafter were clearly illegal and should be refunded to the county.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 8, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By

Wm. J. R. King
Assistant

WMK:LM


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN